## AlphaSense, Inc. v Financial Tech. Partners LP

2024 NY Slip Op 34331(U)

December 6, 2024

Supreme Court, New York County

Docket Number: Index No. 651846/2024

Judge: Anar Rathod Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 45

--------------------------------------------------------------------X

ALPHASENSE, INC., ALPHASENSE OY, ALPHASENSE, LLC

                              Plaintiffs,

                   - v -

FINANCIAL TECHNOLOGY PARTNERS LP, FTP SECURITIES LLC,

                            Defendants.

--------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651846/2024 |
| **MOTION DATE** | 05/31/2024 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

**HON. ANAR RATHOD PATEL**:

     The following e-filed documents, listed by NYSCEF document number (Motion 001) 14–21, 23 were read on this motion to/for <u>DISMISSAL</u>.

     Defendants Financial Technology Partners LP and FTP Securities LLC (collectively "FTP" or "Defendants") move to dismiss the Complaint filed by Plaintiffs AlphaSense, Inc., AlphaSense OY, and AlphaSense, LLC (collectively "AlphaSense" or "Plaintiffs") pursuant to CPLR § 3211(a)(7), and for attorneys' fees and costs.

<u>**Relevant Factual[1] and Procedural History**</u>

     This matter arises from a dispute between Plaintiffs and Defendants regarding an engagement for financial advisory services. NYSCEF Doc. No. 2 (Compl.). Plaintiff AlphaSense, Inc. is a California corporation with its principal place of business in New York. *Id.* at ¶ 18. Plaintiff AlphaSense OY is a Finnish limited company with its principal place of business in Finland. *Id.* at ¶ 19. Plaintiff AlphaSense, LLC is a Delaware limited liability company with its principal place of business in New York. *Id.* at ¶ 20. Defendant Financial Technology Partners LP is a Delaware limited partnership with its principal place of business in California. *Id.* at ¶ 21. Defendant FTP Securities LLC is a Delaware limited liability company with its principal place of business in California. *Id.* at ¶ 22.

     Plaintiffs engaged Defendants as their financial and strategic advisors pursuant to an Engagement Letter dated January 23, 2015, as later amended on October 9, 2015 (the "Agreement"). NYSCEF Doc. Nos. 16, 17 (Engagement Letter and Amendment to Engagement Letter). Plaintiffs allege that, at the time they negotiated the Engagement Letter, they received

---

[1] The facts are taken from the Complaint and are accepted as true for the purpose of this Motion to Dismiss the Complaint.

**651846/2024 ALPHASENSE, INC. ET AL vs. FINANCIAL TECHNOLOGY PARTNERS LP ET AL**       **Page 1 of 8**
**Motion No. 001**

express assurances from Steven McLaughlin, the managing partner at FTP, that he would be personally and directly involved in the business relationship for the entirety of its duration. NYSCEF Doc. No. 2 at ¶ 2. Accordingly, Plaintiffs negotiated for a "Key Man Termination" provision in the Engagement Letter ("Key Man Provision") that allowed for the termination of the Agreement if McLaughlin ceased his active involvement. *Id.* at ¶ 5. This provision, at Paragraph 6 of the Engagement Letter, provides:

> Upon . . . (iii) Steven McLaughlin ceasing his role of actively leading or co-leading the team providing the advisory services to the Company hereunder . . . , (a termination in connection with (ii), (iii) or (iv) being a 'Key Man Termination,') [FTP's] services and this letter agreement may be terminated by the Company at any time with or without cause, which termination shall be effective thirty (30) days after a party has given written notice of termination (the 'Notice Period'); provided however, that if such termination is by the Company, then the termination shall be effective on the later of (y) the expiration of the Notice Period or (x) the date when all amounts due as of the time of termination to [FTP] under this letter agreement have been paid in full.

*Id.* at ¶ 36. The Engagement Letter states that "following the termination of this letter agreement other than by consummation of a Company Sale, in recognition of work performed . . . [FTP] will be entitled to any applicable Transaction Fee if during the Tail Period and regardless of whether or not [FTP] is involved in such Transaction, the Company consummates or enters into any agreement that subsequently results in any Transaction." *Id.* at ¶ 38. The "Tail Period" is defined as "eighteen (18) months from the end of the Notice Period in the case of a Key Man Termination." *Id.* at ¶ 39.

Plaintiffs allege that McLaughlin's promised level of involvement receded shortly after the Agreement was signed, with minimal participation in the Company's capital-raising efforts. *Id.* at ¶¶ 41–46. From 2015 onwards, McLaughlin did not attend any investor meetings in connection with the capital raising, and Plaintiffs relied on their own resources for investor introductions and capital raising. *Id.* at ¶¶ 42–44.

Despite McLaughlin's alleged lack of involvement, Plaintiffs have paid FTP approximately $22.4 million in fees since 2015. *Id.* at ¶ 62. On October 13, 2022, Plaintiffs terminated the Agreement by sending a letter to Defendants pursuant to the Key Man Provision. *Id.* at ¶ 64. Accordingly, Plaintiffs allege that the termination became effective on November 12, 2022, with Defendants' entitlement to any additional fees for the eighteen-month "Tail Period" ending on May 12, 2024. *Id.* at ¶ 15. Defendants have not provided services to Plaintiffs since receiving the termination letter. *Id.* at ¶ 71.

Defendants did not formally respond to the termination notice until sixteen (16) months after receipt, on February 12, 2024, at which time they insisted that "the Engagement Letter remains in full force and effect." *Id.* at ¶¶ 72–74. Defendants also asserted that Plaintiffs owed fees on post-termination transactions plus accrued interest of $1,620,968.78. *Id.* at ¶ 75. Plaintiffs claim that they timely paid the post-transaction fees and no interest is owed. *Id.* at ¶ 76.

Plaintiffs commenced the present action by filing the Summons and Complaint on April 9, 2024. *See* NYSCEF Doc. Nos. 1–2. Pursuant to CPLR § 3001, Plaintiffs seek a declaratory judgment that (1) the Key Man Termination is valid and enforceable, (2) FTP's entitlement to fees expired at the end of the eighteen-month Tail Period as provided for in the Engagement Letter, (3) the Tail Period began to run thirty (30) days after AlphaSense provided FTP with written notice of termination, and (4) no interest is owed to FTP. *Id.* at ¶ 82.

On May 14, 2024, all parties appeared before this Court for a Preliminary Conference. *See* NYSCEF Doc. No. 12 (Prel. Conf. Order). Defendants filed the present motion on May 31, 2024, seeking to dismiss the Complaint for failure to state a cause of action pursuant to CPLR § 3211(a)(7). *See* NYSCEF Doc. Nos. 14–20. Plaintiffs filed their opposition on July 2, 2024, and Defendants filed their reply on July 22, 2024.

*Allegations of Valid Termination of Agreement Under Key Man Provision*

Defendants argue that the Complaint fails to allege sufficient facts manifesting the triggering of the Key Man Provision. NYSCEF Doc. No. 20 at 18. (Def. Mem. of Law). The Key Man Provision allows for termination if McLaughlin "ceas[es] his role of actively leading or co-leading the team." *Id.*; *see* NYSCEF Doc. No. 16 at § 6. Defendants contend the Complaint does not allege facts sufficient to establish that McLaughlin ceased leading or co-leading the team. NYSCEF Doc. No. 20 at 18–22. Instead, the Complaint relies upon isolated instances where McLaughlin was not present at "investor meetings" or did not personally conduct "investor introductions." *Id.* at 19. Defendants argue that these isolated absences do not equate to a cessation of his leadership role. *See id.* (disputing necessary day-to-day responsibilities).

Defendants interpret the terms "lead" and "co-lead" as involving oversight and strategic direction, rather than requiring McLaughlin to personally handle day-to-day aspects of the engagement. *Id.* at 18–19. Defendants claim that the Complaint only alleges that McLaughlin delegated tasks, which is typical of a leadership role and does not imply that he abdicated his responsibilities. *Id.* Defendants further argue that McLaughlin was sharing leadership responsibilities with his experienced colleague, Tim Wolfe. *Id.* at 20. Defendants argue that Plaintiffs fail to address Wolfe's co-lead role. *Id.*

Defendants further argue that Plaintiffs improperly rely on statements made prior to the execution of the Engagement Letter that McLaughlin promised he would be "personally and directly involved." *Id.* at 20–21. Defendants assert that the merger clause in the Engagement Letter supersedes all prior communications and extracontractual statements between the parties. *Id.* at 22. Defendants contend Plaintiffs could and should have explicitly negotiated any anticipated attendance by McLaughlin at investor meetings or specific day-to-day involvement in the advisory work and included said terms in the Engagement Letter. *Id.* at 22. Defendants argue that Plaintiffs now attempt to retroactively rewrite the terms of the Engagement Letter. *Id.*

Plaintiffs rebut that the Complaint adequately pleads facts supporting termination. NYSCEF Doc. No. 21 at 9 (Pl. Mem. of Law). Plaintiffs claim McLaughlin was not actively "leading or co-leading" Plaintiffs' team as promised. *Id.* at 9–10. Specifically, Plaintiffs allege

**651846/2024 ALPHASENSE, INC. ET AL vs. FINANCIAL TECHNOLOGY PARTNERS LP ET AL**     **Page 3 of 8**
**Motion No. 001**

3 of 8

that McLaughlin: (1) provided "no guidance or meaningful support;" (2) failed to make investor introductions; (3) did not attend any investor meetings; (4) failed to provide guidance on Plaintiffs pitch to investors; and (5) only offered minimal input in their fundraising efforts. *Id.* at 9–10. Plaintiffs argue that McLaughlin's failure to fulfill these promises reflects his diminished role on the team, thereby triggering the Key Man Provision. *Id.*

Additionally, Plaintiffs argue that Defendants' suggestion that McLaughlin was "leading behind the scenes," even without visible involvement, is speculative and fails to address the specific allegations in the Complaint concerning his lack of involvement. *Id.* at 10–11. Plaintiffs further assert the Complaint does not allege a moment or event of cessation, but rather that McLaughlin's role diminished gradually during the period of 2015 to 2022.

Although Defendants submitted their February 12, 2024 Termination Response Letter in support of their motion to dismiss, *see* NYSCEF Doc. No. 19, Plaintiffs maintain that it does not conclusively disprove Plaintiffs' claims. *Id.* at 12–13. Because significant factual disputes remain, Plaintiffs argue the motion to dismiss should be denied. *Id.* at 11–12.

*Waiver, Election of Remedies, and Ratification*

Defendants assert that Plaintiffs' alleged right to terminate arose in 2015, when McLaughlin purportedly ceased actively leading or co-leading the FTP team. Nevertheless, Plaintiffs continued performing under the Agreement for seven years, paying millions of dollars in fees, and accepting FTP's services without raising material complaints about McLaughlin's involvement. Defendants contend that this extended delay, coupled with Plaintiffs' continued performance, constitutes a waiver of the termination right and bars Plaintiffs' claims under the doctrine of election of remedies. NYSCEF Doc. No. 20 at 23–24; NYSCEF Doc. No. 2 at ¶¶ 7, 41. Defendants assert that the no-waiver clause in the Engagement Letter does not preclude a finding of waiver where the parties continued performing under the Agreement for the seven-year period following the purported trigger of the Key Man Provision. NYSCEF Doc. No. 23 at 15.

Moreover, Defendants contend that Plaintiffs' lack of complaints during the seven-year period undermines their assertion that McLaughlin ceased his active involvement. Defendants contend Plaintiffs engaged directly with McLaughlin as late as 2021 without raising concerns about his level of involvement. NYSCEF Doc. No. 20 at 21. They argue that Plaintiffs cannot now rely on these purported deficiencies as grounds for termination, given their historic failure to express dissatisfaction. NYSCEF Doc. No. 20 at 23.

Defendants further argue that Plaintiffs ratified the Engagement Letter in October 2015, when the parties executed an amendment that reaffirmed the Agreement. The amendment explicitly states the Engagement Letter would "remain in full force and effect" and leaves the Key Man Provision unaltered. NYSCEF Doc. No. 16 at 6; NYSCEF Doc. No. 20 at 13. Defendants assert that this ratification, combined with Plaintiffs' decision to continue performing under the Agreement without objecting to McLaughlin's alleged earlier lack of involvement, evinces an intent to waive any termination rights based on purported breaches. NYSCEF Doc. No. 20 at 23.

651846/2024 ALPHASENSE, INC. ET AL vs. FINANCIAL TECHNOLOGY PARTNERS LP ET AL          Page 4 of 8
Motion No. 001

4 of 8

Plaintiffs posit four arguments in rebuttal. First, Plaintiffs rely on the no-waiver clause of the Engagement Letter, which states that the Agreement "may not be amended, modified or waived except in writing executed by each of the parties." NYSCEF Doc. No. 16 at § 10. Plaintiffs argue that there is no clear (written or otherwise) waiver to the Agreement that alters their rights under the Key Man Provision. NYSCEF Doc. No. 21 at 19. Second, Plaintiffs argue that—contrary to Defendants' characterization—the Complaint does not allege that an event or moment of cessation occurred in 2015. Rather, the Complaint alleges that McLaughlin's role diminished over a period of time. *See* NYSCEF Doc. No. 2 at ¶¶ 7, 41, 42. The Agreement explicitly permits termination "at any time" if McLaughlin ceases actively leading or co-leading the FTP team, and does not require immediate action. NYSCEF Doc. No. 16 at § 6. Accordingly, Plaintiffs assert that the termination is timely and therefore, valid.

Third, Plaintiffs argue that the election of remedies doctrine does not bar the exercise of termination rights where AlphaSense did not choose inconsistent remedies. AlphaSense contends that, over time, it was only FTP that continued to benefit under the Agreement through the collection of fees even though McLaughlin failed to render any substantive advice or input. NYSCEF Doc. No. 2 at ¶¶ 52–53. In other words, the decision to exercise their termination rights in 2022 is not at odds with having continued under the Agreement despite a gradual decline in McLaughlin's involvement on the team. Plaintiffs further argue that Defendants' cited legal authority highlights the distinction between a party seeking to rescind a contract as a result of a breach and to terminate a contract pursuant to a contractual right. Here, Plaintiffs are not pursuing a breach of contract claim but merely seek to establish the validity of their termination rights.

Finally, Plaintiffs rebut that Defendants' ratification argument fails because AlphaSense does not seek to rescind or repudiate the Agreement and, again, where AlphaSense alleges that McLaughlin's involvement declined over time starting in 2015. Accordingly, they assert "AlphaSense's execution of the Amendment in October 2015 cannot be seen as condoning McLaughlin's *future* lack of involvement… ." NYSCEF Doc No. 21 at 21.

## Legal Discussion

*Legal Standard Under CPLR § 3211(a)(7)*

On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "the standard is whether the pleading states a cause of action, not whether the proponent of the pleading has a cause of action." *Sokol v. Leader*, 904 N.Y.S.2d 153, 155 (2010) (internal citations omitted). "In considering such a motion, the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Id.; see also CSC Holdings, LLC v. Samsung Elecs. Am., Inc.*, 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). "[A]llegations consisting of bare legal conclusions . . . are not entitled to any such consideration. Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 141–142 (2017) (internal citations omitted).

**651846/2024  ALPHASENSE, INC. ET AL vs. FINANCIAL TECHNOLOGY PARTNERS LP ET AL**                    **Page 5 of 8**
**Motion No.  001**

5 of 8

Pursuant to CPLR § 3001, "[t]he supreme court may render a declaratory judgment … as to the rights and other legal relations of the parties to a justiciable controversy," for the primary purpose of "stabiliz[ing] an uncertain or disputed jural relationship with respect to present or prospective obligations." *Chanos v. MADAC, LLC*, 74 A.D.3d 1007, 1008 (2d Dept. 2010); *see also Weiss v. Vishnepolsky*, 224 A.D.3d 564, 565 (1st Dept. 2024). The sole consideration in determining a pre-answer motion to dismiss a declaratory judgment action is "whether a cause of action for declaratory relief is set forth, not … whether the plaintiff is entitled to a favorable declaration." *State Farm Mut. Auto. Ins. Co. v. Anikeyeva*, 89 A.D.3d 1009, 1010 (2d Dept. 2011) (internal citations omitted).

*Plaintiffs' Complaint Sufficiently Pleads Entitlement to Declaratory Judgment*

The allegations in the Complaint present justiciable controversies sufficient to invoke this Court's power to render a declaratory judgment. Plaintiffs have sufficiently alleged facts to support their claim that the Key Man Provision clause in the Engagement Letter was triggered due to a reduction, and ultimate cessation, of Steven McLaughlin's active involvement on the FTP team responsible for rendering financial advisory services to AlphaSense.

The parties do not dispute the validity of the Key Man Provision, but rather whether it was triggered based upon McLaughlin's role—or lack thereof—on the FTP team. The plain language of the relevant provision ("Upon … (iii) Steven McLaughlin ceasing his role of *actively* leading or co-leading the team providing the advisory services to the Company" (emphasis added)) is necessarily subjective in nature. Plaintiffs allege that, *inter alia*, McLaughlin's involvement in the 2015 Series A capital raise "was peripheral at best"; "McLaughlin was effectively missing in action" from the Series B, C, and D investment rounds; "McLaughlin did not attend a single investor meeting in connection with any of these capital raises"; "McLaughlin provided next to no substantive advice or input into AlphaSense's capital raise efforts from 2019 onward." NYSCEF Doc. No. 2 at ¶¶ 42, 43, 44, 52. Consequently, the absence of McLaughlin's involvement left AlphaSense without the promised advice during pivotal capital raises and a time of market volatility. *Id.* at ¶ 46. Plaintiffs further allege that they complied with the Key Man Provision by providing written notice of termination *via* letter dated October 13, 2022. Pursuant to the same provision, Plaintiffs allege that the termination was effective on November 12, 2022, and that FTP has not provided services to AlphaSense since said date. *Id.* at ¶¶ 64, 67, 71.

Defendants' interpretation of the Key Man Provision and factual underpinnings that may or may not have triggered the Provision effectively demonstrate that Plaintiffs have alleged a justiciable controversy. Defendants embark on their own interpretation of the words "lead," "co-lead", and "team"—although the Court observes that Defendants decline to offer any interpretation of "actively"—to establish what elements may trigger the Key Man Provision. In doing so, Defendants assert what activity does not constitute "leading" or "co-leading", yet fail to address why the allegations in the Complaint are insufficient in setting forth a "*bona fide* justiciable controversy, defined as 'a real dispute between adverse parties involving substantial legal interests for which a declaration of rights will have some practical effect.'" *Palm v. Tuckahoe Union Free Sch. Dist.*, 95 A.D.3d 1087, 1089 (2d Dept. 2012) (internal citations omitted).

651846/2024   ALPHASENSE, INC. ET AL vs. FINANCIAL TECHNOLOGY PARTNERS LP ET AL          Page 6 of 8
Motion No.  001

6 of 8

Furthermore, regardless of the parties' pre-contractual statements, the Court cannot resolve the parties' legal rights as relates to the Key Man Provision and whether AlphaSense's alleged termination of the Agreement is valid and enforceable at this stage in the litigation. Accordingly, the Court determines that the Complaint sufficiently pleads a cause of action for declaratory judgment.

*Waiver, Election of Remedies, and Ratification*

Defendants argue that, even if the Court determines that the Complaint alleges a cause of action for declaratory judgment, the doctrines of waiver, election of remedies, and ratification preclude Plaintiffs from excising their termination rights under the Key Man Provision approximately seven years after McLaughlin's purported cessation of personal involvement on the team. "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned," and "[s]uch abandonment 'may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage.'" *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006) (internal citations omitted). "However, waiver 'should not be lightly presumed' and must be based on 'a clear manifestation of intent' to relinquish a contractual protection." *Id.* Courts have found that the existence of an intent to forgo such a right is a question of fact. *See id.* (citing *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York*, 462 N.E.2d 1176 (N.Y. 1984)); *see also Todd Eng. Enterprises LLC v. Hudson Home Grp., LLC*, 206 A.D.3d 585, 587 (N.Y. 2022) ("Therefore, there are triable issues of fact as to whether defendant elected to continue performance rather than to declare a breach… such a waiver 'will not be lightly presumed' and is generally determined by the trier of fact").

"In the ordinary case, an election of remedies is merely a species of waiver." *Kamco Supply Corp. v. On the Right Track, LLC*, 49 N.Y.S.3d 721, 728 (2d Dept. 2017). "[A] party that continues to perform or accept performance despite the failure of a condition precedent established for its benefit may be said—provided that such party's intent is clearly expressed—either to have elected to affirm the contract… or to have waived the satisfaction of the condition. *Id.* (citing *Atkin's Waste Materials v. May*, 34 N.Y.2d 422, 427 (1974)).

Defendants' arguments hinge on the notion that the Key Man Provision is triggered only by a moment or event of cessation, and not by a "gradual process of diminishing involvement." NYSCEF Doc. No. 23 at 12. Defendants, however, do not substantiate this proposition with precise contractual language or case law. Defendants assert that Plaintiffs allege a specific trigger in 2015 based on the allegation contained in paragraph 7 of the Complaint ("Unfortunately, McLaughlin's promised involvement, advice, negotiation engagement, and meaningful investor introductions ceased shortly after AlphaSense engaged FTP, as did his active involvement in leading the team."). This reading ignores the allegations found at paragraphs 41 through 53 of the Complaint, which chart McLaughlin's declining involvement over time, and with sufficient specificity to sustain the claim for declaratory judgment on a motion to dismiss as discussed *supra*. Notably, Plaintiffs allege "McLaughlin's involvement went downhill from there." *Id.* at ¶ 43. Ultimately, the Court is unpersuaded that the Complaint alleges that a trigger occurred in 2015 thereby requiring Plaintiffs to terminate the Agreement at that time. Accordingly, the Court cannot determine—at this stage—that the doctrines of waiver and election of remedies bar AlphaSense's right to invoke the Key Man Provision.

Even then, Defendants do not establish Plaintiffs' clear intent to waive their right to terminate, and the Court cannot ignore the explicit no-waiver clause of the Engagement Letter, which states the Agreement "may not be amended, modified or waived except in writing executed by each of the parties." NYSCEF Doc. No. 16 at § 10; *see also Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S.2d 147 (2007), *aff'd,* 14 N.Y.3d 791 (2010) ("Quite apart from its conflation of the issues of waiver and materiality, Supreme Court failed to consider the agreement's unambiguous no-waiver clause. Such clauses are uniformly enforced").

Likewise, the Court finds Defendants' arguments as to ratification to be unavailing where, as discussed *supra*, Defendants' have not established that the Key Man Provision was triggered in 2015, and that Plaintiffs were therefore required to exercise their termination rights in 2015. Here, the purported ratification is found in the October 2015 Amendment. However, the Complaint sufficiently alleges activity thereafter that would give rise to a valid exercise of the Key Man Provision. *See* NYSCEF Doc. No. 2 at ¶¶ 43, 44, 45, 50, 52, 53.

The Court has considered the parties' remaining contentions and finds them unavailing.

Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss the Complaint pursuant to CPLR § 3211(a)(7) is DENIED in its entirety.

<u>December 6, 2024</u>
**DATE**

**ANAR RATHOD PATEL, A.J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**651846/2024 ALPHASENSE, INC. ET AL vs. FINANCIAL TECHNOLOGY PARTNERS LP ET AL** **Page 8 of 8**
Motion No. 001

8 of 8